

**ORDERED in the Southern District of Florida on September 2, 2021.**

_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No.: 19-15459-MAM

TAO MU,                                      Chapter 7
          Debtor.
_____/

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS (ECF NO. 36 IN CASE NO. 19-15459) AND GRANTING JUDGMENT IN FAVOR OF DEBTOR (ADV. PROC. NO. 19-01673)[1]

THESE MATTERS came before the Court for a consolidated trial on February 18, 2021. Trial encompassed both (i) a Motion to Dismiss (ECF No. 36) filed by Wow Sports, Inc. ("Wow") in Tao Mu's ("Debtor") chapter 7 bankruptcy case (the "Bankruptcy Case") and (ii) Wow's *Complaint Objecting to Discharge and Dischargeability of Debt* (the "Complaint") in Adversary Proceeding No. 19-01673. Before trial, Wow voluntarily dismissed Count I of its Complaint (ECF No. 79),

---

[1] The Court will concurrently enter copies of this Order in Debtor's main bankruptcy case (Case No. 19-15459) and the Adversary Proceeding styled as *Wow Sports, Inc. v. Mu* (Adv. Proc. No. 19-01673).

leaving three remaining counts, all of which sought denial of Debtor's discharge pursuant to 11 U.S.C. § 727 ("§ 727").[2]

Debtor filed an opposition (ECF No. 49) (the "Opposition") to dismissal of his Bankruptcy Case and vigorously defended against the claims asserted in the Adversary Proceeding. At trial, the Court considered all admissible evidence relating to Wow's Motion to Dismiss, Debtor's Opposition, and the remaining counts of the Complaint.

## FACTUAL BACKGROUND

### A. The Wow Agreement

Debtor was 19 years old when he filed his Bankruptcy Case.[3] Prior to filing bankruptcy, Debtor's daily life consisted of intensive tennis training and appearances at competitive tournaments. His formal education ended at age 14, when he began to play tennis full time. Debtor is a Chinese national who understands very little English.

A little less than one year before filling bankruptcy, Debtor entered into a *Business Invessment (sic) and Magagement (sic) Agreement* (the "Wow Agreement") with Wow. Under the Wow Agreement, Wow agreed to provide tennis coaching and management services to Debtor in exchange for a percentage of Debtor's future earnings.

---

[2] All section references are to the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.)* unless otherwise specified.

[3] The petition date was April 26, 2019 (the "Petition Date").

The Wow Agreement contemplated a five-year term commencing in May 2018. Within a few months, however, disputes arose between Debtor and Wow. By August 2018, the parties had stopped working together. In late 2018, Wow initiated an arbitration proceeding against Debtor, which prompted Debtor to file his Bankruptcy Case in April 2019. Debtor credibly testified that the impetus for seeking chapter 7 relief was his inability to defend himself in the arbitration proceeding or pay any potential judgment.

B.  Debtor's Disclosures

Debtor's schedules and statements of financial affairs (collectively, "Schedules") disclosed two primary creditors: Wow and Guishan Jiang. Debtor described his obligation to Wow as a contingent, unliquidated, and disputed debt of $295,000 to Cameron Lickle arising out of a breach of contract in 2018.[4] Debtor listed his obligation to Guishan Jiang as a "personal loan" in the amount of $313,000 with an inception date of "1-2019" (the "Jiang Note").

Debtor's Schedules described his income as $2,000 per month that he received as "Support from Family" and from which he had to pay $5,040 in monthly expenses. These monthly expenditures were relatively modest, consisting of $1,000 for rent (typical for the area), $40 for telephone, $800 for food and housekeeping supplies, $300 for clothes, laundry, and dry cleaning, $200 for personal care products and services, $100 for medical and dental expenses, $600 for transportation (not car

---

[4] ECF No. 76-1, p. 19 (Schedule E, ¶ 4.1). The repeated use of "Cameon" in Debtor's Schedules is a typo. Mr. Lickle's first name is "Cameron".

payments), $200 for entertainment, and $1,800 for "Travel (tickets, hotels etc. for tournaments)".

Debtor's Schedules also disclosed an unexpired executory contract with Guangdong Ersha Athlete Training Center (the "Guangdong Contract"). The chapter 7 trustee did not assume the Guangdong Contract and it was deemed rejected by Debtor's bankruptcy estate 60 days after the Petition Date under § 365(d)(1).

C. Debtor's § 341 Meeting

Debtor required the services of a translator at his § 341 meeting of creditors ("§ 341 Meeting"). Through his translator, Debtor testified that the Jiang Note was a 2019 loan from an acquaintance for $313,000 that was paid to Long Teng Sports ("LTS"), a company owned by Debtor's father, Mu Fuqing ("Mr. Mu"). LTS collected and held the funds on Debtor's behalf because he was less than 18 years old at the time of transfer. LTS distributed the funds incrementally to Debtor over the years as needed. Debtor initially testified at the § 341 Meeting that the reason for the Jiang Note was to pay what he owed Wow. In later testimony, Debtor clarified that the Jiang Note was actually advanced for training and competition expenses, including expenses incurred under the Wow Agreement. Both Debtor and Mr. Mu were obligated on the Jiang Note.

In addition to the proceeds from the Jiang Note, Debtor (through LTS) received $90,000 per year from the Guangdong Contract. The funds from the Guangdong Contract were paid to LTS in exchange for Debtor playing tennis for Guangdong

Province in China. As with the Jiang Note, the Guangdong Contract provided payments to LTS because Debtor was a minor at the time of signing.

D. <u>Discovery and Production of Information</u>

After the § 341 Meeting, Trustee asked Debtor to investigate the disposition of the $313,000 paid from the proceeds of the Jiang Note. After consulting with his father, Debtor learned that the amount actually borrowed was 500,000 RMD, which was equivalent to about $70,000 USD. The funds were paid in two installments:  the first installment of $40,000 was funded in April 2016, and the second installment of $30,000 was funded in July 2017.

To aid with Debtor's required bankruptcy and litigation disclosures, Mr. Mu obtained copies of bank statements confirming that LTS received the payments under the Guangdong Contract and paid taxes on those sums. Mr. Mu and Debtor also provided Wow with (i) personal bank statements reflecting payment of Debtor's expenses, (ii) Debtor's bank card records showing expenses for food, taxi, travel, and for Debtor's competitions, hotels, flights, and Uber, (iii) a declaration (the "<u>Mu Declaration</u>") setting forth Debtor's training expenses for the four years prior to the Petition Date, and (iv) bank records reflecting the use of the proceeds from the Jiang Note  for training, competition, and related expenses.

E. <u>Mr. Mu's Control Over Debtor's Finances</u>

During an August 2019 Rule 2004 examination ("<u>2004 Examination</u>"), Debtor explained that he knew little about his business or financial affairs because his father handled those matters for him. Mr. Mu placed money in Debtor's bank account, which

Debtor then used for his training and living expenses. Debtor clarified that the monthly income of $2,000 specified on his Schedules approximated what his father provided, as the precise sum varied from month to month. Debtor candidly admitted that he personally did not keep detailed financial records and relied upon his father to do so.

F. <u>Mr. Mu's Testimony</u>

Mr. Mu confessed that he sometimes kept details of financial and business matters away from Debtor so as not to impact his tennis game. He also acknowledged that the Guangdong Contract provided funds for Debtor's training fees through LTS from the time when Debtor was 10 years old. Despite the long-standing relationship between Guangdong Province and LTS, Mr. Mu earnestly believed that Debtor's injury as of the Petition Date obviated payments under the Guangdong Contract. Ultimately, even though both Debtor and Mr. Mu assumed that the contract would end as a result of an injury Debtor suffered, Guangdong Province continued to pay LTS during Debtor's rehabilitation.

**ANALYSIS**

**I. Motion to Dismiss the Bankruptcy Case (11 U.S.C. § 707(a))**

Wow sought dismissal of Debtor's Bankruptcy Case without entry of discharge pursuant to § 707(a). In support of dismissal, Wow argued that (a) Debtor filed the Bankruptcy Case purely to thwart arbitration, (b) Debtor's Bankruptcy Case was a two-party dispute, (c) Debtor made no lifestyle adjustments, (d) Debtor could make a meaningful distribution to his creditors, (e) Debtor made no effort to repay Wow,

and (f) Debtor failed to make candid and full disclosures on his Schedules, at his § 341 Meeting, and during his Rule 2004 testimony. Wow claimed that the facts underlying each of these allegations showed bad faith.

In evaluating Wow's request for dismissal, the Court considers the totality of the circumstances. *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1271-72 (11th Cir. 2013); *In re Merkel*, 595 B.R. 608, 611-12 (Bankr. S.D. Fla. 2018).

When viewed as a whole, the record does not support a finding of bad faith. For instance, Debtor did not reduce his creditors to a single creditor shortly before the Petition Date. He was not paying debts of insiders, nor did the Schedules artificially inflate his expenses to disguise his current financial condition. Debtor filed a single bankruptcy case and provided all documents requested by Trustee and Wow.

These actions do not reflect a deliberate and persistent pattern of evading creditors, nor does Debtor appear to be over-utilizing the protections of the Bankruptcy Code. Although Debtor confessed that his inability to pay arbitration expenses and a potential judgment motivated his decision to file bankruptcy, that circumstance alone is not indicative of bad faith. *See Merkel*, 595 B.R. at 614 (listing cases).

Additionally, Debtor has virtually no assets or income. As of the Petition Date, Debtor's debt to Wow, his largest creditor, was estimated at $295,000. Debtor listed one other unsecured creditor, Mr. Jiang, and little to no immediate source of income for repayment of either creditor.

7

Although Wow characterized Debtor's residence as of the Petition Date as a "waterfront" luxury condominium, the residence was a $1,000 per month furnished rental apartment located in an area with a well-known high cost of living. Because Debtor lacked a vehicle, his ability to commute a long distance to his training facility (from what would likely have been only a marginally less expensive area) was limited. He also would have found it very difficult to perform basic shopping tasks and errands unless he lived in a relatively dense urban area, like the downtown location of his rental apartment. Considering these circumstances, Debtor's residence does not appear to have been excessive.

Wow's contention that Debtor should use the proceeds of the Guangdong Contract to repay creditors fails to consider the rejection of the Guangdong Contract. While funds generated from the Guangdong Contract continued to pay LTS (not Debtor) despite the rejection of the contract as a matter of law, usage of the funds was restricted to Debtor's coaching and competition expenditures. Moreover, the funds could only be accessed in exchange for Debtor's appearance at tournaments, rather than at Debtor's convenience or insistence.

Accordingly, the Court specifically finds that there are insufficient indicia of bad faith to warrant dismissal under § 707(a).

**II. The Adversary Proceeding Complaint (11 U.S.C. § 727)**

The Complaint seeks to deny Debtor's discharge under §§ 727(a)(2), (3), (4)(A), and (5). Objections to discharge are construed liberally in favor of the debtor. *Keefe v. Rudolph (In re Rudolph)*, 233 F. App'x 885, 887 (11th Cir. 2007) (citations omitted).

8

A.  <u>Count 2 (11 U.S.C. § 727(a)(2))</u>

In Count 2, Wow asks the Court to deny Debtor's discharge under § 727(a)(2). Despite differing legal standards for § 727(a)(2)(A) and (B), Wow does not distinguish between the two subsections and asserts an indiscriminate claim under § 727(a)(2). The Court need not delve into the nuances of each subsection, however, because Wow has failed to prove intent under either § 727(a)(2)(A) or (B).

Section 727(a)(2) provides:

> (t)he court shall grant the debtor a discharge, unless—(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]

As a basis for dismissal under § 727(a)(2)(A) or (B), Wow argued that Debtor received $313,000 from the Jiang Note for the purpose of repaying his obligation to Wow and instead used those funds for himself or his family. Wow contended that Debtor's failure to transfer the proceeds of the Jiang Note to Wow demonstrated fraudulent intent. The record refutes Wow's position, however.

Debtor promptly corrected his initial misconception that the purpose of the Jiang Note was solely to repay Wow. Debtor's Schedules and later testimony showed that his original statement regarding the Jiang Note was a mistake resulting from his own inexperience with financial matters and inability to correctly interpret the terms of the Jiang Note. At trial, Debtor's limited understanding of business matters, particularly with respect to formal financial instruments, was evident. Although most

debtors could not (and should not) attempt to claim ignorance as a defense, Debtor's youth and status as a professional athlete, as well as the evidence that his father handled and controlled virtually all of Debtor's financial affairs, lent credence to his testimony that he genuinely did not understand the nuances of the terms of the Jiang Note.

Even if the Court were to determine that Debtor's testimony demonstrated ill intent or bad faith (which it does not), the timing of the transfers alone eliminates the potential for denial of discharge under § 727(a)(2). The funds were received ten months before Debtor entered into the Wow Agreement and almost two years prior to the Petition Date. As a result, the Court finds that Debtor did not conceal or transfer funds relating to the Jiang Note within the one year prior to the Petition Date, nor did he do so post-petition.

Accordingly, the elements of § 727(a)(2)(A) and (B) are not met.

B.  Count 3 (11 U.S.C. § 727(a)(3) and (5))

Wow also sought denial of Debtor's discharge under § 727(a)(3) and (5). For this cause of action, Wow pointed primarily to Debtor's failure to maintain personal records of his financial condition and business transactions. Specifically, Wow took issue with Debtor's unfamiliarity with the terms of the Jiang Note, the use of the proceeds from that loan, the disposition or use of the Guangdong Contract proceeds, the precise amount of his actual monthly expenses, and how he afforded training or any other expenses above his stated income.

Because Wow based Count 3 upon two independent subsections of § 727(a), the Court's analysis must cover both legal standards. First, the Court will turn to § 727(a)(3). This subsection provides:

> (t)he court shall grant debtor a discharge, unless—(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

Under § 727(a)(3), a creditor objecting to a debtor's discharge has the initial burden of proving that (1) the debtor failed to maintain and preserve adequate records; and (2) such failure makes it impossible to ascertain the debtor's financial condition and business transactions. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992).

Next, the Court considers § 727(a)(5), which provides:

> "(t)he court shall grant debtor a discharge, unless—(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

To prevail upon a § 727(a)(5) action, the party seeking denial of discharge must show that the debtor failed to sufficiently explain a loss of assets that otherwise could have been used to meet the debtor's liabilities. *Stewart Tilghman Fox & Bianchi, P.A., v. Kane (In re Kane)*, 470 B.R. 902, 934 (Bankr. S.D. Fla. 2012). The determination of whether a particular explanation is satisfactory is left to the discretion of the trial court. *Id*. The court may consider all relevant circumstances, including materiality of any loss or deficiency in light of the facts of the case. *Id*.

Wow relied heavily on Debtor's admitted lack of knowledge of his business and financial affairs but ignored that, for much of the time in question, Debtor was a minor whose business and financial affairs were handled by his father. When asked for details regarding his business and financial dealings as well as any related disposition of funds, Debtor sought and obtained the necessary information from his father and provided it to both Trustee and Wow. Mr. Mu also voluntarily appeared for deposition prior to trial to clarify any questions regarding Debtor's disclosures.

Financial records provided by both Debtor and his father reflect that the Jiang Note and Guangdong Contract proceeds were used for Debtor's professional tennis training and basic living expenses while pursuing this training. The record does not show instances of loss, malfeasance relating to expenditures, or unexplained deficiencies. Through his father, Mr. Mu, Debtor maintained records of his financial matters. And, again through his father, Debtor provided extensive disclosure of his financial dealings, including his training and living expenses.

Considering the full record, including Debtor's youth, unfamiliarity with the intricacies of the financial matters underlying his professional tennis career, and ready disclosure provided by Debtor's father in response to requests for information, the Court concludes that Debtor caused adequate records to be maintained and provided to Trustee and Wow, and satisfactorily explained the loss of any assets. The Court therefore concludes that the elements of both § 727(a)(3) and (5) are not met.

C. Count 4 (11 U.S.C. § 727(a)(4)(A))

Wow sought denial of Debtor's discharge under § 727(a)(4) based on Debtor's

purported false oaths.[5] In support of Count 4, Wow asserted that (1) Debtor's initial testimony regarding the Jiang Note was inaccurate, (2) Debtor disclosed no income except $2,000 per month from Mr. Mu, (3) Debtor falsely stated his monthly expenses, and (4) Debtor's testimony regarding the Guangdong Contract at his § 341 Meeting was fraudulent because the Guangdong Contract continued to pay LTS post-rejection.

Section 727(a)(4)(A) provides:

> (t)he court shall grant the debtor a discharge, unless—(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account.

A creditor seeking to deny the debtor's discharge under § 727(a)(4)(A) must establish by a preponderance of the evidence that (1) the debtor made a statement under oath, (2) that statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *Armento v. Armento (In re Armento)*, 127 B.R. 486, 490 (Bankr. S.D. Fla. 1991). To preclude discharge, a false oath must be both fraudulent and material. *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *Miller v. Burns (In re Burns)*, 395 B.R. 756, 767 (Bankr. M.D. Fla. 2008). A court may not deny discharge where the untruth was the result of mistake or inadvertence. *In re Rudolph*, 233 F. App'x at 889.

A false oath or claim is material if it "bears a relationship to the bankrupt's

---

[5] The Complaint cites to "11 U.S.C. § 727(a)(4)" but only alleges facts applicable to the first subsection of that provision, § 727(a)(4)(A). *See* DE 1 in Adv. Proc. No. 19-01673, at ¶¶ 42-49. (The reference in ¶ 48 to "11 U.S.C. § 727(a)(3)" appears to be a typographical error.) Wow did not seek to introduce evidence supporting application of § 727(a)(4)(B, C, or D). The Court therefore confines its analysis in this Opinion to § 727(a)(4)(A).

business transaction or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). A court may consider all of the surrounding facts and circumstances when evaluating a debtor's actual intent. *Turner v. Hosmer (In re Hosmer)*, No. 02-19961, 8:03-QP-192-PMG, 2004 WL 1964509, at *5 (Bankr. M.D. Fla. July 29, 2004) (internal citation omitted).

Wow failed to demonstrate Debtor's knowledge of the falsity of his statements and his actual intent to defraud. Debtor disclosed the Guangdong Contract on his Schedules and provided copies to Trustee and to Wow. Debtor's limited familiarity with his own finances stemmed from his status as a minor, his focus upon his professional tennis career, and his reliance upon his father's financial management. Any lack of knowledge is more readily attributable to Debtor's youth, limited education, and inexperience than it is to nefarious intent or willful ignorance.

The record also does not reflect that Debtor both understood and intended the falsity of any statement made to Wow regarding the Guangdong Contract or the Jiang Note. As soon as he realized that a prior statement was made in error, Debtor immediately took steps to correct his misstatement. This quick action belies fraudulent intent.

By its own terms, the Guangdong Contract paid LTS, which then in turn doled out funds to pay the expenses associated with Debtor's training. Mr. Mu provided a portion of the sums received by LTS directly to Debtor for living expenses, which made sense in the context of a young professional athlete whose job was, essentially,

14

training and competition. Testimony from Debtor and Mr. Mu regarding this flow of funds was both cogent and credible. There is no indication that Debtor misused or misapplied funds to anything other than basic living expenses.

Crucially, although Debtor was the ultimate beneficiary of funds transferred under the Guangdong Contract, he did not personally control or otherwise administer the flow of funds; LTS, through Mr. Mu, had that authority. The factual circumstances (and location of funds outside the United States) are slightly unusual, but the payment structure mirrors that of a spendthrift trust, which has long been recognized as a legitimate legal creation within the state of Florida. *See* Fla. Stat. § 736.0502; 11 U.S.C. § 541(c)(2). The use by LTS and Mr. Mu's of a "trust-like" arrangement to administer foreign funds for Debtor's training and living expenses within the United States was a reasonable business decision that, under all available facts, does not demonstrate fraudulent intent.

Debtor's explanation regarding his discovery of the disparity between the face value of the Jiang Note and the transferred amounts likewise rang true. His demeanor was forthright when testifying, and his youthful inexperience with financial instruments was evident. Although Debtor's testimony at the § 341 Meeting conflicted with his later correction of that testimony, the record fails to show that any inconsistency was (a) material, and (b) made with intent to defraud.

Debtor's disclosure of expenses on his Schedules also did not indicate an intent to defraud. Debtor provided an apartment lease validating his expenditure of $1,000 per month on rent. His testimony that the remaining items of expenses were

estimated based upon his prior experience was simple and direct. The modest amounts are in line with market rates and represent ordinary expenses, which when taken as a whole and balanced against the candor and credibility of the witnesses, do not reflect that Debtor possessed knowledge of the falsity of his statements when the statements were made or actual intent to defraud. The elements of § 727(a)(4) are not met.

## ORDER

Accordingly, having considered the full record of the Bankruptcy Case and the Adversary Proceeding, the Court, for the reasons stated in the preceding Memorandum Opinion, **ORDERS** as follows:

1.  The Motion to Dismiss is **DENIED**.

2.  Judgment is **GRANTED** in favor of Debtor as to Count 2 of the Complaint.

3.  Judgment is **GRANTED** in favor of Debtor as to Count 3 of the Complaint.

4.  Judgment is **GRANTED** in favor of Debtor as to Count 4 of the Complaint.

### # # #

Copy to:

Stephen Fender, Esq., Counsel to Debtor
*Attorney Fender is directed to serve a copy of this Order upon all interested parties and file a conforming certificate of service.*